## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Buffalo Wild Wings, Inc.,

      Plaintiff,

    v.

Buffalo Wings & Rings, LLC,

      Defendant.

Case No.:  09-CV-1426 (JRT/SER)

**REPORT AND RECOMMENDATION**

---

Lora M Friedemann & Ted C Koshiol, Esqs., Fredrickson & Byron, PA, 200 South 6th Street, Suite 4000, Minneapolis, Minnesota 55402, on behalf of Plaintiff.

Jonathan Marquet & Nicole A Delaney, Esqs., Bassford Remele, PA, 33 South 6th Street, Suite 3800, Minneapolis, Minnesota 55402, on behalf of Defendant.

---

STEVEN E. RAU, United States Magistrate Judge

The above-captioned case comes before the undersigned United States Magistrate Judge on Buffalo Wild Wings' Motion to Dismiss or Strike Third Counterclaim [Doc. No. 176].  This matter was referred to the undersigned by an Order of Reference entered by the District Court on December 13, 2010 [Doc. No. 211], pursuant to 28 U.S.C. § 636(b)(1)(B) and District of Minnesota Local Rule 72.1(b).  For the reasons set forth below, the Court recommends that the motion be granted.

## I.   BACKGROUND

As set forth in this Court's previous orders, this case involves two competing restaurant chains specializing in chicken wings.  Buffalo Wild Wings initiated this action in June 2009, asserting that Buffalo Wings & Rings "mislead the consuming public by capitalizing on Buffalo Wild Wings' valuable trademark and trade dress rights."  (Second Amended Complaint at ¶ 3).

Specifically, Buffalo Wild Wings alleges that when Buffalo Wings & Rings' current owners acquired the company in 2005, a re-branding campaign was initiated to make Buffalo Wings & Rings appear more like Buffalo Wild Wings. Buffalo Wild Wings contends that Buffalo Wings & Rings' ensuing similarity in concept and appearance resulted in customer confusion.

In the [First] Amended Complaint, Buffalo Wild Wings alleged that it owned a number of valid and subsisting trademarks, including 1,496,316 for the word mark BUFFALO WILD WINGS & WECK and an associated design mark 1,497,262, (hereinafter "the Weck Registrations"). The [First] Amended Complaint alleged claims of: trademark infringement of Buffalo Wild Wings' numerous collective marks; trade dress infringement; false marking through Buffalo Wings & Rings use of the ® symbol without owning a trademark for BUFFALO WINGS & RINGS; pursuant to 15 U.S.C. § 1119, for the Court to order the United States Patent and Trademark Office ("PTO") to refuse registration of the word mark BUFFALO WINGS & RINGS in Application Serial No. 77/340,910; for the Court to order the PTO to refuse registration of design marks Application Serial Nos. 77/346,357, 77/346,350, and 77/346,342; violation of the Minnesota Deceptive Trade Practices Act; and unfair competition.

By assignment, Buffalo Wings & Rings acquired Registration No. 1,567,637, issued on November 21, 1989. That mark appears as follows (copied from Second Amended Complaint, Doc. No. 142):



This mark achieved incontestable status under federal trademark law in 1994.  (See Def.'s Mem. of Law in Resp. to Pl.'s Mot. to Dismiss or Strike Third Countercl., (hereinafter "Def.'s Resp.") at p. 3).

Before the lawsuit was filed, Buffalo Wings & Rings applied for three design mark applications, Serial Nos. 77/346,357, 77/346,350, and 77/346,342, none of which specified color, and Buffalo Wild Wings opposed the applications.  At issue for the present motion is Application No. '357:



In both the original Complaint and the [First] Amended Complaint, Buffalo Wild Wings challenged this design mark and asked the Court to direct the PTO to refuse the application.  (See Complaint at ¶ 73-78, [First] Amended Complaint at 71-76).  Shortly after the Complaint was filed, the parties jointly asked the PTO to suspend the opposition proceedings related to the three design marks, including the '357 mark, pending the outcome of this litigation

After this lawsuit began, on August 27, 2009, Buffalo Wings & Rings filed an *ex-parte* request to amend the '637 trademark, allegedly to modernize the mark and include color in the mark.  On April 6, 2010, the PTO amended the registration of the '637 mark from the original registration to the following:



The logo in the amended registration is the same as the mark in Application Serial No. '357, except that color is a feature of the mark.  (See Buffalo Wild Wings' Mem. in Supp. of its Mot. to Dismiss or Strike Third Countercl. at 3).

On May 21, 2010, Buffalo Wild Wings sought leave to amend file a second Amended Complaint to assert a claim (count Six) disallowing Buffalo Wings & Rings' amendment of the '637 registration, to make technical changes clarifying the facts and claims,[1] and to assert a claim for punitive damages.  In opposing the motion, Buffalo Wings & Rings asserted that proposed Count Six was futile because it did not allege a legal basis for cancellation of the amendment to the '637 registration.  Additionally, Buffalo Wings & Rings argued the proposed amendment was untimely because the deadline to amend pleadings had lapsed.  Buffalo Wings & Rings did not assert in response to the motion to amend that filing a counterclaim challenging the Weck Registrations would be an inevitable or necessary consequence of the amendment.  In fact, correspondence between the parties relating to Buffalo Wild Wings' proposed amendment dated April 30, 2010,[2] makes clear that Buffalo Wings & Rings desire to assert a counterclaim challenging the Weck Registrations was "based on recent discovery, including the testimony of John Hinz, that these marks have been abandoned in connection with the identified services." (See Decl. of Laura Meyers dated May 21, 2010 at Ex. J [Doc. No. 52-10]).  On August 26, 2010, then-Magistrate Judge Susan Richard Nelson rejected Buffalo Wings & Rings' arguments

---

[1] Buffalo Wings & Rings did not oppose Buffalo Wild Wings' motion to amend to the extent it sought to make technical changes to the complaint.  (See Order dated August 26, 2010 [Doc. No. 141] at p. 5).

[2] While Buffalo Wings & Rings raised the possibility of asserting the counterclaim in April 2010, Buffalo Wings & Rings did not make a motion for leave to amend at that time.  In fact, Buffalo Wings & Rings did not assert its counterclaim until September 10, 2010, more than four months later.

and granted the motion to amend the complaint to challenge the amendment of the '637 mark and to make the technical changes to the complaint [Doc. No. 141].[3]

Following the Court's Order, Buffalo Wild Wings served its Second Amended Complaint on August 30, 2010 [Doc. No. 142].[4]   Buffalo Wings & Rings filed and served its Answer and Counterclaims to the Second Amended Complaint ("Amended Answer") on September 10, 2010 [Doc. No. 164].   In the Amended Answer, Buffalo Wings & Rings asserted a Counterclaim seeking cancellation of Buffalo Wild Wings' marks Nos. '316 and 262, the Weck Registrations, on the grounds they have been abandoned.   Buffalo Wings & Rings asserts that this Counterclaim is necessary to respond to Buffalo Wild Wings new claim challenging the amendment of the '637 mark.   Buffalo Wings & Rings did not seek leave of the Court for permission to amend its Answer to include the new Counterclaim.

Pursuant to the Pretrial Scheduling Order in this case [Doc. No. 14], the deadline for filing motions to amend the pleadings, expired on November 1, 2009, the parties were to complete discovery on or before July 1, 2010, and dispositive motions were to be served and filed by September 1, 2010.   Indeed, the Parties filed cross-motions for summary judgment on September 1, 2010 [Doc. Nos. 145, 150, 153].   The Honorable John R. Tunheim heard oral argument on those motions on December 29, 2010, and they remain pending.

---

[3] On January 26, 2011, this Court denied Buffalo Wild Wings' motion to amend for leave to assert a claim for punitive damages [Doc. No. 238].

[4] Apparently, Buffalo Wings & Rings alleges that Buffalo Wild Wings' service of the Second Amended Complaint was untimely because it occurred on August 30, 2010, which was only two days before the dispositive motion deadline.  (See Def.'s Resp. at p. 1).  Judge Nelson's August 26, 2010 Order, however, gave Buffalo Wild Wings permission to file the Second Amended Complaint and rejected Buffalo Wings & Rings' objections to the amendment based on timeliness.  (Order No. 141 at 4-5).

## II.   <u>DISCUSSION</u>

The Parties dispute whether Buffalo Wings & Rings was required to seek leave of the Court to add the counterclaim to its Amended Answer, or whether Buffalo Wings & Rings was allowed to add the counterclaim as a matter of right.   Buffalo Wild Wings asserts that Buffalo Wings & Rings should have sought leave of the Court to bring the new Counterclaim because the Second Amended Complaint did not change the theory or scope of the case and even if it did change the scope of the action, Buffalo Wings & Rings' counterclaim was not directly responsive to Buffalo Wild Wings' amendments.   Buffalo Wings & Rings asserts that it was not required to seek leave of the Court to add the Counterclaim because Buffalo Wild Wings changed the scope of the action, thereby allowing Buffalo Wings & Rings to "plead anew" and assert counterclaims unrelated to the new allegations.   This Court disagrees.

Pursuant to Fed. R. Civ. P. 15(a)(2), if a party may no longer file an amended pleading as a matter of course, then a party must seek leave of the court or written consent to amend from the opposing party.   There is dissention among the federal courts regarding the permissible scope of a response to an amended pleading without leave of the court.   <u>See e.g.</u> <u>QRG, Ltd. v. Nartron Corp.</u>, No. 1:06-CV-1777, 2007 WL 1202967, *2 (M.D. Pa. April 23, 2007); <u>S. New England Tel. Co. v. Global NAPS, Inc.</u>, No. 3:04-CV-2075, 2007 WL 521162, *1-2 (D. Conn. Feb. 14, 2007); <u>Elite Entm't, Inc. v. Khela Brothers Entm't</u>, 227 F.R.D. 444, 446 (E.D. Va. 2005); <u>Pereira v. Cogan</u>, No. 00-CV-619, 2002 WL 1822928, *2 (S.D.N.Y. Aug. 7, 2002).[5]

---

[5] All of the above-referenced cases base their analysis in some part on the provisions of the prior version of Fed. R. Civ. P. 15(a).   That version of the rule provided, in relevant part, "[a] party shall plead *in response* to an amended pleading . . . within 10 days after service of the amended pleading."   Fed. R. Civ. P. 15(a) (2007) (emphasis supplied).   In 2009, the Rule was amended to change the time periods within which a party is allowed to make an amendment as a matter of course and the "plead in response to an amended pleading" language is no longer in the current version of the rule.   The advisory committee notes make clear, however, that the changes to the rule are meant to establish new time limits for filing responsive pleadings and there is

Generally, courts have developed three approaches to the issue, which can be characterized as permissive, moderate, and narrow.  Global NAPS, Inc., 2007 WL 521162, *1. Buffalo Wild Wings urges this Court to follow those cases applying the narrow and/or the moderate approach (See e.g. Buffalo Wild Wings Reply Mem. in Supp. of its Mot. to Dismiss or Strike Third Countercl. at 9, hereinafter "Buffalo Wild Wings' Reply Br.").  Buffalo Wings & Rings asks the Court to adopt the moderate approach.  (Def.'s Resp. at 7-8). [6]

Under the permissive approach, a party may amend its answer as of right in response to an amended complaint, without limitation and regardless of the scope of the change in the amended complaint.  Id. (citing Am. Home Prod. Corp. v. Johnson & Johnson, 111 F.R.D. 448, 453 (S.D.N.Y. 1986)); Uniroyal Chem. Co., Inc. v. Syngenta Crop Prot., Inc., No. 3:02-CV-2253, 2005 WL 677806, *2 (D. Conn. March 23, 2005).  Courts adopting this approach base the rule on the liberal pleading standards of Rule 15.  Veronico v. Pastapunto, No. 98-CV-1154, 1999 WL 1216951, *1 (S.D.N.Y. Dec. 17, 1999), cited in Global NAPS, Inc., 2007 WL 521162, *2.

Courts following the narrow approach hold that a party is only entitled to respond as of right to an amended complaint if its answer is strictly confined to the new issues raised by the

---

nothing in the notes to suggest the rule was meant to change the scope of a party's substantive response to an amended pleading.  Thus, the Court concludes that this change in language does not make these cases any less instructive on this issue.  The 2009 amendments to the Fed. R. Civ. P. also deleted Rule 13(f) and amendments to add counterclaims are now governed by Rule 15.

[6] The Court notes that Buffalo Wings & Rings misstates the holding of one of the cases cited in its brief.  Buffalo Wings & Rings states that in Akzenta Paneele + Profile GmbH v. Unilin Flooring N.C. LLC, 464 F. Supp. 2d 481, 486-87 (D. Md. 2006) the Court denied a motion to strike an amended counterclaim even where the counterclaim went beyond the scope of the amendments to the complaint.  (Def.'s Resp. at 8).  In reality the court in Akzenta held that the defendant should have sought leave of the court to amend its answer when it was "not directly responsive to the changes in Akzenta's complaint."  Id. at 486.  Nonetheless, the Court allowed the amendment because it concluded it would have been a waste of judicial resources to require the defendant to seek leave to amend given the extremely close relationship between the two patents at issue.  Id.

amended complaint.  <u>Global NAPS, Inc.</u>, 2007 WL 521162, *2; <u>Wechsler v. Hunt Health Sys.,</u> <u>Ltd.</u>, 186 F. Supp. 2d 402, 416 (S.D.N.Y. 2002).  The rationale for this rule is that a defendant does not have a right to assert new counterclaims unrelated to the amendment in the same way that they had a right to assert counterclaims in their original answer.  <u>Global NAPS, Inc.</u>, 2007 WL 521162.

Under the moderate approach, courts limit the breadth of the changes allowed in an amended response to the breadth of changes made in the amended complaint.  <u>Uniroyal Chem.</u>, 2005 WL 677806 at *2; <u>Pereira</u>, 2002 WL 1822928, at *4.   Under this rule, there is no requirement that a defendant specifically tailor its answer to the amended complaint,  rather the court considers whether the defendant's answer affects the scope of the litigation in a manner proportional with the amended complaint.  <u>Global NAPS, Inc.</u>, 2007 WL 521162; <u>Pereira</u>, 2002 WL 1822928, at *4.  The rationale for this rule is an equitable consideration that if one party expands its case by adding new theories and claims, the other party may do likewise.  <u>Id.</u>

The leading case in this circuit on the issue is <u>Tralon Corp. v. Cedarapids, Inc.</u>, 966 F. Supp. 812, 832 (N.D. Iowa 1997), aff'd 2000 WL 84400 (8th Cir. Jan. 21, 2000) (unpublished table decision).  In <u>Tralon</u>, the court adopted the rule from <u>Brown v. E.F. Hutton & Co., Inc.</u>, 610 F. Supp. 76 (S.D. Fla. 1985) stating "when a plaintiff files an amended complaint which changes the theory or scope of the case, the defendant is allowed to plead anew as though it were the original complaint filed by the Plaintiff."  The Court went on to limit the rule stating, "[t]he obvious corollary is that if an amended complaint does not change the theory or scope of the case, a [defendant] must seek leave of court pursuant to Rule 15(a) before it can amend its answer to assert a counterclaim."  <u>Id.</u>; <u>see also</u> <u>Intermedics, Inc. v. Cardiac Pacemakers, Inc.</u>, No. 4-95-716, 1998 WL 35253496, * (D. Minn. July 7, 1998).  Generally, this rule is consistent with

the "moderate" approach. Pereira, 2002 WL 1822928, at *4; Uniroyal Chem., 2005 WL 677806 at *2. This Court agrees with Tralon and Intermedics that a moderate approach is appropriate in assessing whether a party needs leave of court to file an amended responsive pleading to an amended pleading. To the extent a party expands the scope or theory of its case, the other party should have the opportunity to respond in kind.

Under the moderate approach, the threshold question is whether Buffalo Wild Wings' amendments expanded or changed the scope or theories of the case, a point on which the Parties disagree. Buffalo Wings & Rings asserts that the scope and theory of this case have changed "substantially" because Buffalo Wild Wings added new factual allegations; and Buffalo Wild Wings added Count Six to the Second Amended Complaint seeking cancelation of the amendment to the '637 registration based on fraud to the PTO and because the amendment is a material alteration of the original mark. The Court concludes that none of these amendments expanded the theory or scope of the case.

As set forth in this Court's previous Order granting Buffalo Wild Wings' Motion to Amend [Doc. No. 141], the factual clarifications Buffalo Wild Wings made were "technical" and made mostly to conform to the evidence in discovery. First, Buffalo Wild Wings merely updated the description of its trade dress "to be consistent with its interrogatory answers." An amendment to the pleading to conform to the evidence in the case certainly does not change the scope of the case. If anything, a comparison of the [First] Amended Complaint with the Second Amended Complaint shows Buffalo Wild Wings narrowed the description of its trade dress. Second, Buffalo Wild Wings also amended the facts to clarify what actions were taken by Buffalo Wings & Rings as opposed to what actions were taken by its predecessor. Again, the re-pleading of these facts makes the factual allegations more specific, and the amendment does not

alter the scope or the theories of the case.  Finally, Buffalo Wild Wings narrowed the temporal scope of the false marking claim to Buffalo Wings & Rings' use of the ® symbol before the recent amendment to Buffalo Wings & Rings' mark.  Obviously, narrowing the claim does not expand the scope or theories of the case.

Next, Buffalo Wings & Rings argues that Buffalo Wild Wings' new Count Six, which seeks cancelation of the Amendment to the '637 Registration, "substantially" expands the scope of this case.  Buffalo Wild Wings argues that the Amendment to the '637 Registration does not expand the scope of the case because it merely adds color to the design mark in Application Serial No. '357, a mark that has been at issue since the outset.  In response, Buffalo Wings & Rings argues that the challenge to the amendment to the '637 registration necessarily attacks the registration and incontestable status of the original '637 mark, and that mark was not specifically challenged in any of the counts of the original or First Amended Complaint.  This Court disagrees.

Although it is true that Buffalo Wild Wings did not seek cancelation of the '637 mark in the [First] Amended Complaint, it has challenged Application Serial No. '357 since this lawsuit was initiated.  (See Complaint at ¶ 73-78).  In Count Five of the Original Complaint Buffalo Wild Wings sought an order from this court refusing registration of the '357 application.  The mark in the '357 application is the same as the amendment to the '637 registration except that the '357 application is black and white and the '637 amendment is in color.  Throughout this case Buffalo Wild Wings has asserted that Buffalo Wings & Rings' logos infringe on Buffalo Wild Wings trademarks and the amendments do not change this theory of the case.  In the original complaint, Buffalo Wild Wings asserted that Buffalo Wings & Rings' logos infringed on Buffalo Wild Wings trademarks and trade dress.  Buffalo Wild Wings included a picture of Buffalo

Wings & Rings' use of the logo in the amendment to the '637 registration as an example of this infringement.  (See Complaint at ¶ 36).  While Buffalo Wings & Rings argues Buffalo Wild Wings is challenging the original '637 registration by challenging the amended '637 registration, Buffalo Wild Wings' briefs on summary judgment for this claim belie Buffalo Wings & Rings' assertion.  (See Doc. Nos. 152, 183).  Buffalo Wild Wings is only seeking cancellation of the amendment.

Buffalo Wild Wings' motion should also be granted because allowing Buffalo Wings & Rings to assert the new counterclaim at this stage in the proceedings would unfairly prejudice Buffalo Wild Wings and circumvent the pretrial scheduling order, as well as this Court's Order granting Buffalo Wild Wings' motion to amend.  Buffalo Wild Wings sought leave to amend its Complaint because of the amendment to the '637 registration that was not issued until the end of discovery.  In contrast, Buffalo Wings & Rings did not seek leave of this Court to amend and its amendment is based on discovery developed in this case, not actions by the PTO.

In connection with Buffalo Wild Wings' motion to amend, Buffalo Wings & Rings asserted that the reason it refused to stipulate to the amendments was because Buffalo Wild Wings would not agree to allow Buffalo Wings & Rings to add a counterclaim challenging the Weck Registrations.[7]  Once the motion was brought, however, Buffalo Wings & Rings did not inform the Court that it planned to respond to any amended pleading with a new counterclaim, a fact that would have been significant to the determination of that motion.  In fact, while Buffalo Wild Wings asserted in the motion to amend that it would be improper for Buffalo Wings &

---

[7] While the Court appreciates that the Parties attempted to reach an agreement regarding the amendments to the pleadings, the Court notes that the Parties have been unable to reach agreements on most anything in this case and have continually sought the Court's involvement in their disagreements.  (See e.g. Doc. Nos. 77, 85, 113, 128, and 129).  The Court recommends that the Parties engage in a more meaningful meet and confer process should any new disputes arise, before once again seeking Court intervention.

Rings to bring counterclaims that were not responsive to new Count Six, (Buffalo Wild Wings Mem. in Supp. of Mot. for Leave to Amend to Seek Punitive Damages at 6-8), Buffalo Wings & Rings did not respond to this argument (See generally Def.'s Mem. of Law in Opp. to Mot. for Leave to Amend and Seek Punitive Damages).  As Buffalo Wild Wings correctly stated, "[t]he new cause of action merely seeks to undo changes [Buffalo Wings & Rings] made to its registered trademark during the pendency of this case so that the parties are in the same position they were in when [Buffalo Wild Wings] filed suit."  (Buffalo Wild Wings' Reply Br. at 5-6).  Count Six seeking cancelation of the Amendment to Registration '637 therefore does not change the scope or theories of this case.

Under the moderate approach, Buffalo Wings & Rings was not allowed to "plead anew" in response to the Second Amended Complaint, but rather needed leave of this Court to assert the new counterclaim.   Because Buffalo Wings & Rings did not seek leave of the court the counterclaim was procedurally improper at this stage in the litigation.  The motion to dismiss the counterclaim should be granted.

### III.    **RECOMMENDATION**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Buffalo Wild Wings' Motion to Dismiss or Strike Third Counterclaim [Doc. No. 176] be **GRANTED**.

Dated: March 21, 2011                         s/ Steven E. Rau_____
                                              STEVEN E. RAU
                                              United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **April 4, 2011,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.   Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.   A party may respond to the objecting party's brief within ten days after service thereof.   A judge shall make a de novo determination of those portions to which objection is made.   This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.