UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| BUFFALO WILD WINGS, INC., *a Minnesota corporation*, | Civil No. 09-1426 (JRT/SER) |
| Plaintiff/Counter Defendant, | **ORDER** |
| v. | |
| BUFFALO WINGS & RINGS, *also known as Buffalo Wings & Rings, LLC*, | |
| Defendant/Counter Claimant. | |

Lora Mitchell Friedemann, Laura L. Myers, and Ted C. Koshiol, **FREDRIKSON & BYRON, PA**, 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402, for plaintiff/counter defendant.

Jonathan C. Marquet, Kevin P. Hickey, and Nicole A. Delaney, **BASSFORD REMELE, PA**, 33 South Sixth Street, Suite 3800, Minneapolis, MN 55402, for defendant/counter claimant.

Plaintiff/counter-defendant Buffalo Wild Wings, Inc. ("BWW") filed this trademark infringement action against defendant/counter-claimant Buffalo Wings & Rings, LLC ("BWR"). The parties operate competing national restaurant chains which feature buffalo-style chicken wings. On June 8, 2011, the Court issued an order granting in part and denying in part the parties' cross-motions for summary judgment. (Docket No. 251 ("June 8 Order").) The June 8 Order rendered several pending motions in limine moot. Remaining are the parties' opposing motions in limine regarding BWW's damages expert and BWR's rebuttal damages expert. The Court will grant in part each party's motion in limine, as discussed below.

## BACKGROUND[1]

BWW's complaint alleges infringement of its trademarks and trade dress in violation of the Lanham Act, false marking, violations of the Minnesota Deceptive Trade Practices Act ("DTPA"), Minn. Stat. § 325D.44, and unfair competition.  (Second A. Compl., Docket No. 142.)   It accuses BWR of infringing on its restaurant trade dress, its registered name – "Buffalo Wild Wings" – and its "winged buffalo" design mark, which features a sideways facing black buffalo with white wings inside a yellow circle outlined in black.  According to BWW, in 2007 BWR made a series of changes to its logos, signage, restaurant décor, and marketing materials intended to move closer to BWW's themes in an attempt to take advantage of BWW's marketplace recognition. BWW's allegations focus on four particular aspects of BWR's design: (1) its restaurants' interior décor, (2) its unregistered name "Buffalo Wings & Rings," (3) BWR's pending trademark applications for three "black and white logos" incorporating its new aesthetic, and (4) an approved amendment to its previously registered design mark featuring a forward looking buffalo head inside a circle ("the red circle logo").  The red circle logo is a colored version of one of the three black and white logos, the patent applications of which remain pending.  Because BWR submitted its applications for the black and white logo designs to the United States Patent and Trademark Office ("USPTO") in black and white, if the applications are granted, BWR could employ any color combination, including a yellow background, when utilizing the design marks.

---

[1] A detailed factual background is available in the Court's June 8 Order.

The June 8 Order disposed of several motions for summary judgment. Specifically, the Court concluded that that BWW does not have a protectable trade dress claim separate from its word and design marks claims, and granted summary judgment to BWR on BWW's claim of trade dress infringement. (June 8 Order at 12-14.) The Court also granted summary judgment to BWR on BWW's claims challenging its use of the phrase "Buffalo Wings & Rings" and the red circle logo. (*Id.* at 17-28.) However, the Court found a genuine issue of material fact with regard to whether BWR's proposed black and white logos are likely to be confused with BWW's registered winged buffalo logo, particularly if their coloring mimics BWW's yellow, black, and white scheme. Accordingly, the Court denied BWR summary judgment with regard to BWW's claims relating to the black and white logos. (*Id.*) The Court disposed of numerous other related claims, affirmative defenses, and a bifurcation request. (*Id.* at 28-41.) Remaining after the June 8 Order are BWW's trademark infringement and DTPA claims against BWR with regard to the black and white logos (Counts 1 and 7), and its demand to refuse registration of the design mark applications for the black and white logos (Count 5).

BWR has moved to exclude the proposed testimony of BWW's damages expert Carol Ludington, and BWW has moved to exclude some of the proposed testimony of BWR's expert Craig Siiro. (Docket Nos. 192, 199.) The June 8 Order rendered moot several other motions in limine. (Docket Nos. 188, 196.) Despite BWR's protestations that the June 8 Order also rendered the instant motions moot, and although the June 8 Order altered the contours of the case, the Court concludes that these motions remain relevant. The Court will grant in part and deny in part each party's motion.

## ANALYSIS

### I.  STANDARD OF REVIEW

Rule 702 of the Federal Rules of Evidence imposes upon the Court a "basic gatekeeping obligation" to ensure the relevance and reliability of expert testimony based on both scientific and, as here, other specialized or technical knowledge.  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).  Expert testimony is admissible under Rule 702 if it meets three prerequisites:

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact.  This is the basic rule of relevancy.  Second, the proposed witness must be qualified to assist the finder of fact.  Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

*Lauzon v. Senco Prod., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (internal citations and quotation marks omitted); Fed. R. Evid. 702.  The proponent of the expert testimony has the burden of establishing the admissibility of such testimony by a preponderance of the evidence.  *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757-58 (8th Cir. 2006).  "Courts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility."  *Id.* at 758.  However, "[w]hen the analytical gap between the data and proffered opinion is too great, the opinion must be excluded."  *Id.*

### II.  MOTION TO EXCLUDE CAROL A. LUDINGTON

The Lanham Act provides for equitable recovery once a plaintiff establishes infringement:

> When a violation . . . shall have been established . . . , the plaintiff shall be entitled, . . . subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.  The court shall assess such profits and damages or cause the same to be assessed under its direction.  In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.  In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount.  If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.

15 U.S.C. § 1117(a).  This provision accords the Court "considerable discretion in fashioning an appropriate remedy for infringement."  *Taco Cabana Intern., Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1127 (5th Cir. 1991); *see also Metric & Multistandard Components Corp. v. Metric's, Inc.*, 635 F.2d 710, 715 (8th Cir. 1980).  BWR moves to exclude Ludington's expert opinion regarding BWW's damages because it is based on a legal theory that BWR argues is unavailable in the circumstances presented by this case, and because it is highly speculative, particularly in light of the Court's June 8 Order.

To estimate BWW's damages, the second listed form of relief provided by the Lanham Act, Ludington employs a "reasonable royalty" theory of recovery.  This theory is based upon a hypothetical license agreement between the licensee, BWW, and the licensor, BWR, and a hypothetical licensing fee.  As Ludington explains, her analysis assumes that BWW and BWR would have agreed to a license with regard to BWW's brand – including its trademarks, service marks, name, trade dress – as the result of a hypothetical negotiation between the parties.  (Decl. of Lora M. Friedemann, Jan. 18, 2011, Ex. A ("Ludington Report") at 13, Docket No. 222.)  In reaching her conclusion of

a reasonable royalty rate of 5-10% of franchisee revenues, or royalties of $6.5 million to $13 million, Ludington considers several factors articulated in a patent case, *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970). Specifically, Ludington weighs considerations including BWW's willingness to enter into a license agreement with BWR and its existing licensing policy; the royalties and fees the parties charge their franchisees; the nature and scope of the hypothetical license; the commercial relationship between the parties; the effect of the intellectual property on sales; the effect of BWW's intellectual property on its sales; the parties' comparative profitability and commercial success; and the extent to which BWR has made use of BWW's intellectual property. (Ludington Report at 14-23.)

BWR argues that the *Georgia-Pacific* reasonable royalty theory is inappropriate as a matter of law in trademark cases where, as here, the parties did not have any prior licensing relationship. The Patent Act, which the *Georgia-Pacific* court applied, expressly permits a "reasonable royalty" theory of recovery for infringement. 35 U.S.C. § 284. The Lanham Act, on which BWW's claims are based, does not. 15 U.S.C. § 1117(a). Courts consistently conclude that, where no prior licensing agreement existed between the parties in a trademark infringement suit, a royalty theory of recovery is inappropriately speculative. *See, e.g.*, *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 208-09 (3d Cir. 1999) ("[W]hen the courts have awarded a royalty for past trademark infringement, it was most often for continued use of a product beyond authorization, and damages were measured by the license the parties had or contemplated."); *Juicy Couture, Inc. v. L'Oreal USA, Inc.*, No. 04 CIV. 7203, 2006 WL

1359955, at *4 (S.D.N.Y. May 18, 2006) ("[T]he speculative nature of [the expert's] calculations underscores the wisdom of limiting royalty damages to existing or negotiated licensing arrangements."); *Nat'l Fire Prot. Ass'n, v. Int'l Code Council,* No. Civ.A.03–10848, 2006 WL 839501, at *29 (D. Mass. Mar. 29, 2006) (finding that an "award of reasonable royalties has no basis in reality, much less any basis in fact" where it is based on a hypothetical licensing agreement between parties who would never have consented to such an agreement) (internal quotation marks omitted); *M2 Software, Inc. v. Madacy Entm't*, No. CV 00–2853 AHM, 2003 WL 25667610, at *1 (C.D. Cal. Jan. 23, 2003) (prohibiting evidence of damages based on a reasonable royalty theory as "impermissibly speculative"). As Ludington acknowledged, "BWW would not willingly enter into a license with BWR . . . . [A] license is inconsistent with BWW's business model." (Ludington Report at 20.) Ludington's testimony thus measures "actual damages" based on an arrangement that the parties never contemplated and would never have consummated.[2]

BWW, however, cites other decisions permitting the use of a hypothetical reasonable royalty as a measure of profits in the context of trademark infringement despite the absence of a prior licensing agreement, most notably *Sands, Taylor & Wood v. Quaker Oats Co.*, 34 F.3d 1340 (7th Cir. 1994). *Sands* has been characterized as an

---

[2] In *A & L Laboratories, Inc. v. Bou-Matic, LLC*, No. Civ.02-4862, 2004 WL 1745865, at *2 (D. Minn. Aug. 2, 2004), cited by BWR, the district court concluded that "[g]enerally, reasonable royalties are awarded as a measure of damages for infringement of a patent or trademark." In that case, however, the court was able to utilize previously existing licensing agreements between the parties and their predecessors to arrive at an appropriate reasonable royalty rate. *See id.* at *5. In those circumstances, the reasonable royalty rate was based upon actual negotiations between the parties. This case, where defendant readily agrees that no licensing agreement was contemplated, is distinguishable.

outlier. *See Juicy Couture, Inc.*, 2006 WL 1359955, at *4 (noting that *Sands* involved "an extraordinary situation . . . [in which] the Seventh Circuit suggested a royalty calculation as a starting point in order to limit an earlier award of damages based on profits that it viewed as a windfall to the plaintiff" (internal quotation marks omitted)); *Nat'l Fire Prot. Ass'n Inc.*, 2006 WL 839501, at *29 ("Of the courts that have allowed an award of reasonable royalties in trademark infringement cases, only the Seventh Circuit has permitted such an award without evidence of a prior licensing relationship or when the parties had not shown a willingness to license the mark."). Nonetheless, permitting a reasonable royalty rate in the absence of a previous licensing agreement between parties is not without precedent in Lanham Act cases. *See, e.g.*, *Coryn Group II v. O.C. Seacrets,* No. WDQ–08–2764, 2010 WL 1375301, at *8 (D. Md. Mar. 30, 2010) (denying motion to exclude testimony regarding the use of a hypothetical royalty "as **an alternative measure** of [the] defendant's **profits**" (emphasis added)); *adidas Am., Inc. v. Payless Shoesource, Inc.*, No. CV 01–1655–KI, 2008 WL 4279812, at *12 (D. Or. Sept. 12, 2008) (citing *Sands* with approval and concluding that "[a] reasonable royalty based on a hypothetical negotiation can be a measure of actual damages in a trademark infringement case"). As one court has observed, "[n]o court has announced a *per se* bar against the presentation or consideration of such evidence." *Cornyn*, 2010 WL 1375301, at *8.

The factual basis of an expert's opinion generally goes to the credibility, not the admissibility, of the testimony. *Hartley v. Dillard's, Inc.*, 310 F.3d 1054, 1061 (8th Cir. 2002). The testimony may be excluded only if it is "so fundamentally unsupported that it

can offer no assistance to the jury" and must be excluded. *Id.* Accordingly, if not for the June 8 Order, the Court might be inclined to agree with the *Coryn* court's assessment that criticisms of Ludington's method "may be adequately addressed through cross-examination and the presentation of contrary evidence." 2010 WL 1375301, at *8.[3]

However, in *Sands* and other Lanham Act cases permitting a reasonable royalty theory despite the parties' lack of interest in entering into a licensing agreement, the rate was based on the licensing of the specific trademark or trade dress at issue. *See, e.g.*, *Cornyn*, 2010 WL 1375301, at ***7**-8 (expert report addresses the only trademark challenged); *adidas Am., Inc.*, 2008 WL 4279812, at *12 ("The royalty figure awarded by the jury is consistent with royalties between adidas or Payless with third parties and also with royalties between third parties."); *see also Sands*, 34 F.3d at 1350 (a reasonable royalty rate can only be characterized as measuring actual damages "**if** ascertained with reasonable certainty" (emphasis original)). Ludington's methodology and conclusions, by contrast, are based on BWR's alleged misappropriation of **all** of BWW's intellectual property described in its complaint including its trade dress, name, and logos; she conducts no independent analysis of any particular aesthetic aspect. Ludington provides no opinions relating to actual damages based on BWR's infringement of BWW's winged

---

[3] The Court does not find merit in BWR's argument that Ludington's reasonable royalty rate testimony is speculative because it calculates a range of potential damages and relies upon the revenues of BWR's franchisees rather than BWR itself. BWR has cited no caselaw to support the proposition that a damages range is inherently speculative, and if it proves infringement BWW is entitled to recover damages for infringing sales by BWR's franchisees. *See Inwood Labs., v. Ives Labs.,* 456 U.S. 844, 854 (1982) ("[One who] intentionally induces another to infringe a trademark, or . . . continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, . . . is contributorily responsible for any harm done as a result of the deceit.").

buffalo trademark through its usage of the black and white logos.[4] To the contrary, BWW asserts that the amount of franchise fees, royalties and advertising fees the parties charge their franchises – for the **entire package** of branded material – "factored strongly" in Ludington's analysis. (Buffalo Wild Wings' Mem. in Opp'n at 11, Docket No. 219.) Infringement by the black and white logos (excluding the red circle logo version) on the winged buffalo mark, however, is the only remaining basis for an award of damages in light of the June 8 Order.

Accordingly, regardless of whether the reasonable royalty theory is available as a matter of law, the Court concludes that Ludington's reasonable royalty calculation is inadmissible as applied to this case in light of the Court's June 8 Order. *See Cole v. Homier Distrib. Co.,* 599 F.3d 856, 865 (8th Cir. 2010) (an opinion based on "incorrect factual premises" is properly excluded). BWW argues that the winged buffalo mark is severable from the other aspects of Ludington's reasonable royalty measurement because she conducted mathematical calculations to enable the jury to match a drop in the reasonable royalty rate with a corresponding reduced monetary quantity. These calculations do nothing to cure the underlying deficiency: the rate range is still based on a hypothetical licensing fee agreement for an **integrated** collection of intellectual property, most of which is no longer at issue in this case. BWW also offers to omit reference to the $6.5 million to $13 million range, but it has not stated how Ludington will calculate an appropriate reasonable royalty rate and range based on the winged buffalo mark alone,

---

[4] Because she did not consider an independent licensing fee for the black and white logos, Ludington also offers no opinion on how to further limit such a hypothetical licensing fee to exclude BWR's red circle logo, a colored version of one of the black and white logos.

excluding BWR's use of the red circle logo. Accordingly, the Court grants BWR's motion in limine in part, and will prohibit Ludington from testifying about a reasonable royalty rate.

The June 8 Order does not, as BWR argues, render the entire Ludington Report irrelevant and unreliable. The Ludington Report also provides an assessment of the profits BWR allegedly obtained unfairly. Specifically, Ludington discusses BWR's franchisor revenue, increase in value during the period of alleged infringement, advertising expenditures, and brand development costs; she explains how BWR was unjustly enriched through its infringement. (Ludington Report at 25-27, Docket No. 222.) If BWW proves infringement on its winged buffalo mark, it is permitted to recover, "subject to the principles of equity, . . . defendant's profits . . . ." 15 U.S.C. § 1117(a). While it is BWW's burden to limit its damages analysis to the only trademark giving rise to a claim for damages, "**defendant** must prove all elements of cost or deduction claimed" with regard to the remedy of profits. *Id.* (emphasis added). Ludington's testimony regarding profits remains relevant and will not be excluded.

### III.    MOTION TO EXCLUDE CRAIG SIIRO

BWW moves for the exclusion of certain portions of the expert opinion of BWR's rebuttal damages expert Craig Siiro. (Decl. of Lora M. Friedemann, Nov. 1, 2010, Ex. C ("Siiro Report"), Docket No. 201.) BWR asserts that if the Court determines that Ludington's opinions are not relevant or admissible under Rule 702, then Siiro's rebuttal

opinions are unnecessary, rendering BWW's motion in limine moot.[5] Because the Court will permit Ludington to testify regarding BWR's profits, Siiro's testimony criticizing Ludington's assessment of BWR's profits remains relevant and is admissible. (*Id.* at 13-20.) The Court's June 8 Order and exclusion of Ludington's current reasonable royalty testimony does, however, seem to moot several of BWW's objections to his testimony. The Court will consider each objection in turn.

BWW first argues that Siiro's "legal opinions" are inadmissible. It is well established that "experts may not invade the court's province by testifying on issues of law." *Holman Enters. v. Fid. and Guar. Ins. Co.*, 563 F. Supp. 2d 467, 472 (D.N.J. 2008) (internal quotation marks omitted). BWW specifically objects to Siiro's opinions that (1) BWW suffered no "actual damages," (2) royalties are not an available measure of damages in a trademark infringement case, and (3) BWW cannot recover damages for infringement by BWR franchisees.

BWW's objection regarding "actual damages" takes aim at Siiro's characterization of what the Ludington Report does **not** include and what BWW has **not** produced, namely "any documentation of lost profits or other actual damages resulting from the alleged infringing activity." (Siiro Report at 4, Docket No. 201.) Siiro is certainly entitled to observe the dearth of evidence of lost profits, and BWW does not contend otherwise. Moreover, since the Court has excluded Ludington's testimony regarding damages, Siiro is certainly allowed to note that all that remains of her testimony is a consideration of BWR's profits, rather than its damages. *See* 15 U.S.C. § 1117(a) (listing

---

[5] BWW's motion in limine also seeks the exclusion of two other proposed experts. The parties agree that the June 8 Order renders moot these aspects of the motion.

defendant's profits and plaintiff's damages as two independent methods of recovery). Accordingly, the Court denies this aspect of BWW's motion in limine.

As to Siiro's opinions that royalties are not an available measure of damages in this case and that BWW cannot recover damages for infringement by BWR franchisees, the exclusion of Ludington's testimony regarding a reasonable royalty rate makes it unlikely that Siiro will offer these opinions. However, the Court agrees that these are inappropriate legal opinions. They are also incorrect. As discussed above, there is no per se bar against employing a reasonable royalty theory to assess damages in a trademark infringement case even when no prior licensing agreement between the parties exists. *Sands*, 34 F.3d at 1350; *Cornyn*, 2010 WL 1375301, at *8. Moreover, BWW **is** contributorially responsible for infringement by BWR franchisees. *See Inwood Labs.*, 456 U.S. 844 at 854. As a precautionary measure, the Court will grant BWW's motion in limine in this regard and prohibit Siiro from offering these two opinions.

In addition, BWW objects to Siiro's reliance on the parties' pre-suit settlement negotiations. Specifically, Siiro states that "it is my understanding BWW and BWR had settlement discussions and in the process a draft settlement agreement was negotiated in January 2009. This draft settlement agreement did not call for any damages to BWW from BWR." (Siiro Report at 5, Docket No. 201.) Siiro relies on this information to support his opinion that the Ludington Report does not calculate any actual damages to BWW. Settlement negotiations are inadmissible when "offered to prove liability for, invalidity of, or amount of a claim." Fed. R. Evid. 408(a). Accordingly, the Court grants this part of BWW's motion and will prohibit Siiro from testifying about the parties' pre-

suit settlement discussions to support his observation about the dearth of evidence regarding damages. BWW also objects to Siiro's reference to the parties' pre-suit discussions in the context of identifying 2008 as the starting point for the alleged infringement. BWW agrees that this particular objection is moot; after the Court's June 8 Order, 2008 **is** the appropriate starting point.

In sum, the Court grants BWW's motion in limine with regard to Siiro in part. The Court prohibits Siiro from opining that royalties are not an available measure of damages in a trademark infringement case and that BWW cannot recover damages for infringement by BWR franchisees. The Court further prohibits Siiro from relying on the parties' pre-suit settlement discussions. All other aspects of Siiro's expert report are admissible to the extent that they remain relevant.

**ORDER**

Based on the foregoing, and the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that

1. Buffalo Wings & Rings, LLC's Motion to Exclude Plaintiff's Damages Expert [Docket No. 192] is **GRANTED in part** and **DENIED in part**.

    a. The motion is **GRANTED** insofar as Ludington may not offer testimony about a reasonable royalty rate.

    b. The motion is **DENIED** in all other regards.

    2.    Buffalo Wild Wings, Inc.'s Motion to Exclude Testimony of John Campbell, Joan Dillon and Craig Siiro [Docket No. 199] is **GRANTED in part** and **DENIED in part**.

    a.    The motion is **GRANTED** insofar as Siiro shall be prohibited from opining that royalties are not an available measure of damages in a trademark infringement case and that BWW cannot recover damages for infringement by BWR franchisees.  The Court further prohibits Siiro from relying on the parties' pre-suit settlement discussions.

    b.    The motion is **DENIED** in all other regards.

DATED:  September 29, 2011  
at Minneapolis, Minnesota.

                                                                           s/ John R. Tunheim  
                                                                           JOHN R. TUNHEIM  
                                                                  United States District Judge